UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 07-235-JBT

J & E CONSTRUCTION, INC.,                                                    PLAINTIFF

V.                                    **MEMORANDUM OPINION**

BOBCAT ENTERPRISES, INC., ET AL.,                                    DEFENDANTS

\* \* \* \* \* \* \* \* \* \*

# I.  INTRODUCTION

On June 21, 2007, Plaintiff J & E Construction, Inc. ("J&E"), n/k/a JLJ Construction, Inc.[1], filed this breach-of-contract action in Fayette Circuit Court, against defendants Bobcat Enterprises, Inc. ("BEI") and Clark Equipment Company ("Clark"), asserting that defendants had breached certain warranties associated with three pieces of large equipment manufactured by Clark which plaintiff purchased from BEI on or about March 25, 2005.

Plaintiff seeks compensatory damages, costs and attorney's fees.

On July 20, 2007, defendants removed this action from Fayette Circuit Court, pursuant to 28 U.S.C. § 1332.

This matter is presently before the court on defendants' motion for summary judgment [DE #18].  This motion has been fully briefed and is ripe for review.  Additionally, the court also heard arguments of counsel and discussed this motion with the parties at the pretrial conference on August 21, 2008.

---

[1] James L. Jones ("Jones") is self-employed and has been the sole proprietor of J&E since 1997.  When he divorced in 2000, he purchased his wife's one-half interest in J&E, and he changed the name of the company to JLJ Construction, Inc.  However, following J&E's name change to JLJ Construction, Inc., Jones has been the sole owner, shareholder and officer of J&E, n/k/a  JLJ Construction, Inc. ("JLJ").  (*See* Jones' Depo., pp. 9-10).

## II.  FACTUAL BACKGROUND

J&E is in the construction/building/excavation business.  A component of this business involves the use of earth-moving equipment.  Jones, J&E's, president, only officer, and sole owner, has  been in this business for more than ten years.  On or about March 25, 2005, Jones, on behalf of J&E, purchased the following three pieces of large earth-moving type equipment from BEI: (1) a 2005 Bobcat Hydraulic Mini-Excavator, 435 Serial # 56321147; (2) a 2005 Bobcat Compact Track Loader T300,  Serial # 525413660; and (3) a 2005 Bobcat Compact Track Loader T300, Serial # 525414615, all of which had been manufactured by defendant Clark.  The total amount of this transaction, which Jones financed through CitiFinancial Services, including the cost of this equipment purchase plus the unpaid balance on used equipment plaintiff traded in to BEI on this purchase, was $180,009.48.

Each piece of Bobcat equipment came with the identical, specific, written warranty, which, generally, provided for the repair or replacement of any defective parts for a period of one year subsequent to the purchase thereof.  However, this "repair or replacement" warranty was the **only** warranty, and the defendants expressly excluded all other warranties, express or implied, as well as the recovery of all incidental and consequential damages. Jones, J&E's principal, signed and acknowledged that he had read and understood the warranties that came with this equipment. [Jones' Depo. at 16; *see also* WARRANTY Bobcat Excavators and WARRANTY Bobcat Loaders, attached as Exhibit 2 to Jones' Deposition].  Additionally,  as each piece of equipment was delivered to J&E, Jones signed a Delivery Report "acknowledging the warranty conditions and limitations as outlined in [the] copy of the warranty statement."  [Delivery Report Loader and Deliver Report Excavator, attached as Exhibit 3 to Jones' Deposition].

The written warranty on each piece of equipment was contained on one page and consisted of four (4) paragraphs.  The warranty in question is set out below:

> Bobcat Company warrants to its authorized dealers and authorized
> dealers of Bobcat Equipment Ltd., who in turn warrant to the owner,
> that each new Bobcat Excavator [loader] will be free from proven

2

defects in material and workmanship with respect to (i) all components of the product except as otherwise specified herein for twelve (12) months, (ii) tracks for twelve (12) months on a prorated basis based on the remaining depth of the track at the time any defect is discovered, and (iii) Bobcat brand batteries, for an additional twelve (12) months after the initial twelve month warranty period, provided that Bobcat Company shall only reimburse a fixed portion of the cost of replacing the battery during such additional twelve months. The foregoing time periods shall all commence after delivery by the authorized Bobcat dealer to the original buyer.

During the warranty period, the authorized Bobcat dealer shall repair or replace, at Bobcat Company's option, without charge for parts and labor, any part of the Bobcat product except as otherwise specified herein which fails because of defects in material or workmanship. The owner shall provide the authorized Bobcat dealer with prompt written notice of the defect and allow reasonable time for repair or replacement. Bobcat Company may, at its option, require failed parts to be returned to the factory. Travel time of mechanics and transportation of the Bobcat product to the authorized dealer for warranty work are the responsibility of the owner. The remedies provided in this warranty are exclusive.

The warranty does not apply to diesel engine fuel injection pumps and injectors or tires (except Bobcat brand tires). The owner shall rely solely on the warranty, if any, of the respective manufacturers thereof. This warranty does not cover replacement of scheduled service items such as oil, filters, tune-up parts, and other high-wear items. This warranty does not cover damages resulting from abuse, accidents, alterations, use of the Bobcat product with any accessory or attachment not approved by Bobcat Company, air flow obstructions, or failure to maintain or use the Bobcat product according to the instructions applicable to it.

**THIS WARRANTY IS EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES AND CONDITIONS, EXCEPT THE WARRANTY OF TITLE. BOBCAT COMPANY DISCLAIMS ALL OTHER WARRANTIES AND CONDITIONS, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OR CONDITIONS OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. IN NO EVENT SHALL BOBCAT COMPANY OR THE AUTHORIZED DEALER BE LIABLE FOR ANY SPECIAL, INCIDENTAL, INDIRECT OR CONSEQUENTIAL DAMAGES WHATSOEVER, INCLUDING, BUT NOT LIMITED TO, LOSS OR INTERRUPTION OF BUSINESS, LOST PROFITS, OR LOSS OF MACHINE USE WHETHER BASED ON CONTRACT, WARRANTY, TORT, NEGLIGENCE, STRICT LIABILITY, STATUTE OR OTHERWISE, EVEN IF BOBCAT COMPANY OR THE AUTHORIZED BOBCAT DEALER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE TOTAL LIABILITY OF BOBCAT COMPANY AND THE**

3

**AUTHORIZED BOBCAT DEALERS WITH RESPECT TO THE PRODUCT AND SERVICES FURNISHED HEREUNDER SHALL NOT EXCEED THE PURCHASE PRICE OF THE PRODUCT UPON WHICH SUCH LIABILITY IS BASED.**

<u>WARRANTY</u>, *see* Exhibit B to <u>Defendants' Motion for Summary Judgment</u> - DE #18.

During the two-year period of time subsequent to plaintiff's purchase of these three pieces of equipment, BEI serviced the three pieces of equipment a total of twenty-five times – the Bobcat Compact Track Loader T300 Serial # 525413660 and the mini-excavator were each serviced eight times, and the Bobcat Compact Track Loader T300 Serial #525414615 was serviced nine times. The majority of the service work on this equipment was conducted in the field, although occasionally, plaintiff took the equipment BEI for service. While not provided for in the warranty, on those occasions wherein repairs could not be effectuated in the field, and the equipment was taken to BEI for service, BEI provided loaner equipment to plaintiff, at no cost to the plaintiff.

Jones states that he stopped using these three pieces of Bobcat equipment because they did not operate properly and were not safe to use. Jones also stopped making payments to CitiFinancial Services, which had financed the purchase of this equipment, and in November 2007, CitiFinancial Services repossessed this equipment from J&E for defaulting on the loan. At the time the equipment was repossessed, the Bobcat Compact Track Loader T300, Serial #525413660 had 1590 hours of service; the Bobcat Compact Track Loader T300, Serial # 525414615 had 1624 hours of service; and the Bobcat Hydraulic Mini-Excavator 435 Serial # 56321147 had 1705 hours of service.

In conjunction with J&E's default on the loan with CitiFinancial Services, J&E filed this filed this action asserting claims for breach of contract [Complaint, Count I], breach of express warranty [Complaint, Count II] and breach of implied warranties [Complaint, Count III]. J&E seeks compensatory damages for principal paid, for lost profits, costs allegedly incurred in transporting the equipment to be repaired, costs allegedly incurred in purchasing hydraulic fluid for the equipment, insurance coverage and repossession fees. *See* J&E's Answer to Defendants' Interrogatory No. 6. Plaintiff seeks total compensatory damages of $180,197.

### III.  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**A.      Standard for Summary Judgment**

In *Menuskin v. Williams*, 145 F.3d 755 (6th Cir. 1998), the Sixth Circuit reiterated the standard to be employed when considering a motion for summary judgment, as follows:

> . . .  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56©).  In applying this standard, we view the evidence so that all justifiable inferences are drawn in favor of the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

*Menuskin*, 145 F.3d at 761.  *See also Street v. J. C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989).

With this standard in mind, the court will proceed to defendants' motion for summary judgment.

### Discussion/Analysis

**B.      Disclaimer of express and implied warranties**

Plaintiff claims that when it purchased the equipment, "there was an implied warranty of fitness for a particular purpose and implied warranty of merchantability under Kentucky's version of the Uniform Commercial Code" and that the defendants breached these implied warranties. [Complaint, ¶¶ 28-29].  Plaintiff's claim for breach of implied warranties ignores the fact that the Warranty provided with each piece of equipment specifically disclaimed all implied warranties, as seen from the fourth paragraph of the one-page Warranty, which is written in all capital letters and is set out in bold face type, and states that:

> **THIS WARRANTY IS EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES AND CONDITIONS, EXCEPT THE WARRANTY OF TITLE.  BOBCAT COMPANY DISCLAIMS ALL OTHER WARRANTIES AND CONDITIONS, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OR CONDITIONS OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.**

WARRANTY, *see* Exhibit B to Defendants' Motion for Summary Judgment - DE #18.

5

"Under Kentucky law, a party may exclude or disclaim any implied warranty of merchantability or any implied warranty of fitness by including the appropriate language in the contract or agreement."  *Gooch v. E.I. du Pont de Nemours & Co.*, 40 F. Supp. 2d 863, 868 (W.D. Ky. 1999).  Specifically, KRS § 355.2-316(2) provides:

> [T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous.

A disclaimer is conspicuous if it is "so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it."  KRS § 355.1-201(2).  Terms are conspicuous where they are "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size."  *Id.*  Whether a disclaimer is conspicuous is a question of law for the court to decide.  *Id.*

In the present action, the disclaimer language in the Warranties provided to J&E is in writing, mentions merchantability (in the case of the implied warranty of merchantability), is set off in all capital letters making it larger than the surrounding text, and is in bold-face type.  [See Exhibit B to  <u>Defendants' Motion for Summary Judgment</u> - DE #18].   Given the distinguishing characteristics of the disclaimer language from the remainder of the text contained in the Warranty, the court concludes, as a matter of law, that the disclaimer is conspicuous.  Language in the body of a form is conspicuous where, as in this case, "it is in larger or other contrasting type or color." KRS § 355.1-201(2).  Consequently, the court also concludes that the disclaimer language in the Warranties provided to J&E plainly satisfy the requirements of KRS § 355.2-316 and effectively disclaimed any

express and implied warranties created by statute.

In *Gooch*, *supra*, 40 F. Supp.2d 863, the court held that the warranty language contained in the product's label effectively nullified any implied warranties made by the defendant.  *Id.* at 868-69.  The disclaimer language in *Gooch* appeared in an offset boxed section. The heading was

written in a bold typesetting and, the specific language disclaiming all the implied and express warranties appeared in all capital letters. *Id.* at 866, 868. Similar to the disclaimer in *Gooch*, to reiterate, the disclaiming language in the Warranties at issue is written in a bold typesetting and is written in all capital letters.

In *Gooch*, the court concluded that "[t]hese actions were adequate to put a reasonable party on notice of the disclaimers." *Id.* at 868. In the present action, the court concludes that the disclaimer language at issue was adequate to put plaintiff on notice that the defendants had disclaimed all implied warranties and all other express warranties. It is significant that Jones, on behalf of J&E, reviewed and signed the Warranties, acknowledging that he understood them [Jones' Depo. at 16]. Additionally, Jones also signed Delivery Reports, acknowledging the conditions and limitations provided in the Warranty. *See* Exhibit C to Defendants' Motion for Summary Judgment - DE #18.

Consequently, for all of the foregoing reasons, the court concludes that the defendants effectively disclaimed all express and implied warranties associated with the sale of these three pieces of large equipment to plaintiff and that plaintiff's claim for breach of express and implied warranties fails as a matter of law.

## C.  Remedy limited to "repair or replacement" of equipment

Although the disclaimer language analyzed above effectively disclaimed all express and implied warranties, as plainly stated therein, plaintiff was not without recourse in the event that the equipment proved to be defective in material or workmanship. For a period of one year subsequent to the purchase of this equipment, the defendants agreed to repair or replace the equipment if there was a defect in material or workmanship. This exclusive warranty is stated in the first paragraph of the four-paragraph Warranty, and expressly states:

> [E]ach new Bobcat Excavator [and loader] will be free from proven defects in material and workmanship with respect to (i) all components of the product except as otherwise herein provided for twelve (12) months, (ii) tracks for twelve (12) months on a prorated basis…and (iii) Bobcat brand batteries for an additional twelve (12)

7

months after the initial twelve month warranty period, provided that
Bobcat Company shall only reimburse a fixed portion of the cost of
replacing the battery during such additional twelve months.

WARRANTY, *see* Exhibit B to Defendants' Motion for Summary Judgment - DE #18.

Thus, plaintiff's remedy was limited to "repair or replacement" of the equipment for a one-year period, under certain conditions.  The "repair or replacement" remedy was the only warranty provided since, as previously noted herein, the defendants effectively disclaimed all other warranties, express and implied.  The Warranties additionally provided that during the warranty period, "the authorized Bobcat dealer shall repair or replace…any part of the Bobcat product…which fails because of defects in material or workmanship." [*Id.*]  Defendants further provided that repair and replacement of the defective part of the Bobcat product was plaintiff's exclusive remedy for breach of the express warranty.  [*Id.*]

Just as KRS § 355.2-316(2) permits a seller to exclude implied warranties, KRS § 355.2-719 permits a seller to limit its liability should a breach of warranty be established.  Kentucky law expressly allows parties to an agreement to limit the buyer's remedies to repair and replacement of nonconforming goods.  KRS § 355.2-719.  Where the parties have agreed to limit the buyer's remedies, a plaintiff is entitled to additional remedies only where circumstances cause an exclusive or limited remedy to fail of its essential purpose.  KRS § 355.2-719.

"To meet its burden of proof that a limited warranty of repair or replacement has failed of its essential purpose, the buyer must show that effective repairs have not been performed or can not be performed….[If repairs can be performed,] [t]he nonconformity must be removed within a reasonable time." 67A AM. JUR. 2D Sales § 250 (2003).  Over a two-year period subsequent to the purchase of this equipment, at plaintiff's request, defendant BEI performed repair work to the three pieces of equipment for a total of twenty-five times for various alleged problems.  As previously stated herein, the Bobcat Compact Track Loader T300 Serial # 525413660 and the mini-excavator were each serviced eight times, and the Bobcat Compact Track Loader T300 Serial #525414615 was serviced nine times.  The majority of the service work on this equipment was conducted in the field,

although occasionally, plaintiff transported the equipment to BEI for service.  Even after the one-year  warranty period expired,  BEI continued to address plaintiff's concerns for an additional year and provided it with free replacement equipment while repairs were made to this equipment.

Thus, the question now becomes whether the exclusive "repair or replacement" remedy provided to plaintiff failed of its essential purpose.  To address this question, defendants have provided the court with the opinions of their expert, Norman Thomas Sams, who has been in the Compact Construction business for eighteen years and has provided prior expert testimony on behalf of Bobcat Enterprises, Inc., and Bobcat Company in litigation filed in 2004 in state court in Butler County, Ohio.  Based on his review of the documents exchanged between the parties, all pleadings filed herein, the parties' respective discovery responses, and his visual inspection of the equipment at issue, Mr. Sams rendered the following opinions:

Opinions regarding the T300 SR# 525413660:

It is my opinion that BEI and Bobcat Company complied with the attached warranties as they relate to the T300 SR# 525413660.  The limited remedy of repair and replacement provided by the warranties did not fail of its essential purpose.  All requested repairs performed by BEI and Bobcat personnel were competently performed in a timely manner.  BEI and Bobcat went out of their way to keep the equipment running.  Indeed, BEI and Bobcat personnel performed service work on the equipment that did not fall under the attached warranties.  In addition, free loaner equipment was often supplied at no cost to Mr. Jones, a service not required by the attached warranties.

Opinions regarding the T300 SR# 525414615:

It is my opinion that BEI and Bobcat Company complied with the attached warranties as they relate to the T300 SR# 525414615.  The limited remedy of repair and replacement provided by the warranties did not fail of its essential purpose.  All requested repairs performed by BEI and Bobcat personnel were competently performed in a timely manner.  BEI and Bobcat went out of their way to keep the equipment running.  Indeed, BEI and Bobcat personnel performed service work on the equipment that did not fall under the attached warranties.

Opinions regarding the 435g SR# 563211147:

It is my opinion that BEI and Bobcat Company complied with the attached warranties as they relate to the 435g SR# 563211147.  The limited remedy of repair and replacement provided by the warranties did not fail of its essential purpose.  All requested repairs performed by BEI and Bobcat personnel were competently performed in a timely manner.  BEI and Bobcat went out of their way to keep the

equipment running.  Indeed, BEI and Bobcat personnel performed service work on the equipment that did not fall under the attached warranties.  In addition, free loaner equipment was often supplied at no cost to Mr. Jones, a service not required by the attached warranties.  Upon inspection, the 435 excavator showed signs of abuse, misuse or both.  The boom on this unit is not cracked, as Mr. Jones has alleged, but is torn at the pivot between the boom and dipper sections.  The reported swing issues and the boom tear are consistent with damage caused by sweeping and pushing with the swing on the unit.  The 435 is not designed to perform this function.  Also, Mr. Jones has, on occasion, run a hydraulic breaker on this unit which does not meet manufacture[r]'s specifications.  This breaker causes excessive vibration in the hydraulic system which can lead to numerous hydraulic failures.

Expert Report of Norman Thomas Sams, pp. 1-2 (see Exhibit D to Defendants' Motion for Summary Judgment - DE #18).

The foregoing opinions expressed by defendants' expert that the limited warranties provided to plaintiff in regard to these three pieces of equipment did not fail of their essential purpose stand unrefuted.  Given the uncontradicted opinions of defendants' expert, the court concludes that the exclusive, limited remedy of repair and replacement provided by the warranty on this equipment did not fail of its essential purpose; therefore, plaintiff is entitled to no additional remedies.  See KRS § 355.2-719.

**D.    Damages sought by the plaintiff**

In its responses to defendants' Interrogatory No. 6, requesting J&E to detail its damage claim, plaintiff stated:

> The amount of damage is approximately $180,197 calculated as follows (in approximate figures):

|     |     |
| --- | --- |
| I   | $66,000 for money which Plaintiff paid on the equipment (principal only); |
| II  | $1500 in gasoline driving the equipment back and forth from Defendant's facility for repairs (30 trips at $50 average each in gasoline), |
| III | $17,956 for employee pay while picking up and dropping off the equipment for repairs, each of the approximate 60 trips (30 repairs) took at least two hours each ($67/hr. for 4 employees: $12/hr., $14/hr., $25/hr), |
| IV  | $1500 for times the equipment was repaired and loaners were unavailable or not provided to Plaintiff during equipment breakdown, |

10

V       $300 in lost hydraulic fluid for when the equipment leaked
        the fluid after Defendant allegedly repaired the equipment;

VI      $241: filing fees and sheriff service fees

VII     $2700: 1/3 insurance coverage on the equipment for the 1/3
        of the time that the equipment was non-functioning (4/25/05
        – 7/24/07);

VIII    $91,000: $115,000 (principal only) repossession fees, rest of
        contract - $24,000 (approximate profit made from equipment
        during its use calculated as follows:  $72,000 [1200 hours on
        the excavator at $60/hr] - $84,000 [1400 hours on the T300
        at $60/hr.] - $84,000 [1400 hours on the 2nd T300 at $60/hr]
        - $216,000 in expenses for operating the equipment.

        Plaintiff is not entitled to the damages for the breach of warranty in regards
to special damages, incidental damages, indirect damages, or consequential damages
as per the terms of the contract.

[J&E's Answer to Defendants' Interrogatory No. 6].

        As seen from the foregoing answer to defendants' Interrogatory No. 6, the only damages
identified therein are for consequential or incidental damages.  "Incidental damages resulting from
the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and
care and custody of the goods rightfully rejected, any commercially reasonable charges, expenses
or commissions in connection with effecting cover and any other reasonable expense incident to the
delay or other breach."  KRS § 355.2-715.  "Consequential damages include any loss resulting from
general or particular requirements and needs of which the seller at the time of contracting had reason
to know and which could not reasonably be prevented by cover or otherwise."  *Id.*

        Consequently, since the only damages sought by plaintiff are for consequential or incidental
damages and since the limited, exclusive warranties in question exclude the recovery of
consequential or incidental damages, as plaintiff acknowledged in its answer to defendants'
Interrogatory No. 6, the court concludes that plaintiff is not entitled to the recovery of consequential
or incidental damages.

        Furthermore, even if the court had determined that the exclusive remedy of repair and
replacement of the defective parts failed of its essential purpose, KRS 355.2-719(2) "does not
categorically invalidate an exclusion of consequential damages when a limited remedy fails of its
essential purpose."  *Rheem Mfg. Co. v. Phelps Heating & Air Conditioning, Inc.*, 746 N.E.2d 941,

947 (Ind. 2001); *see also Carboline Co. v. Oxmoor Center*, No. 84-C-48-MR, 1985 WL 185466 (Ky. App. 1985) (citing *Johnson v. John Deere Co.*, 306 N.W.2d 231 (S.D. 1981)).  Where a limited remedy of repair and replacement fails of its essential purpose, consequential damages may still be excluded as long as the exclusion is not unconscionable.  *Id.* Unconscionability is a question of law for the court's determination.  *See, Gooch*, 40 F. Supp. 2d at 871.  "A provision is unconscionable when it is 'so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract.'" *Id.* (quoting UCC § 2-302, cmt.1).  "The principal underlying this rule is to prevent oppression and unfair surprise." *Id.* "Unconscionability deals with grossly unequal bargaining power at the time of the contract's formation….[U]nconscionability rarely exists unless the buyer is a consumer." *Lewis Refrigeration Co. v. Sawyer Fruit, Vegetable & Cold Storage Co.*, 709 F.2d 427, 435 (6th Cir. 1983).

In the present action, plaintiff J&E has been in the excavation business for more than ten years.  Its sole owner, officer, and shareholder, Jones, has bought and sold equipment for use in the excavation business several times since J&E's formation.  At the time of this equipment purchase, Jones traded in equipment manufactured by two of Bobcat's competitors, equipment which he also claimed was defective.  Jones specifically acknowledged the limitation on the consequential damages at the time the contract was entered into with BEI.  [Jones' Depo. at 12-19].  Thus, in this case, the buyer was a business entity, a sophisticated excavation company, as opposed to an individual consumer.  Being a sales transaction between two commercial, business entities, the court concludes that there was no unequal bargaining power between the two entities or that plaintiff was surprised by the language excluding plaintiff's recovery of consequential damages, as there is no evidence to support such a finding.  For these reasons, the court concludes that defendants' exclusion of consequential damages is not unconscionable.

Additionally, in both plaintiff's Answer to defendants' Interrogatories and in Jones' deposition, Jones acknowledged that J&E was not entitled to special damages, incidental damages, or consequential damages under the contract.  "Plaintiff is not entitled to the damages for the breach

12

of warranty in regards to special damages, incidental damages, indirect damages, or consequential damages as per the terms of the contract." [J&E's Answer to Defendants' Interrogatory No. 6; Jones' Depo. at 16].

In summary, plaintiff's alleged damages include payments made on the equipment, payments to its employees when picking up and dropping off the equipment, unsubstantiated costs for when there were no loaners available, cost of hydraulic fluid for the equipment, filing fees, insurance, and repossession fees. All of the damages claimed by plaintiff constitute "loss resulting from general or particular requirements and needs" of J&E, as defined by KRS § 355.2-715. Courts have recognized that insurance premiums and finance charges are incidental damages. See *Michiana Mack, Inc. v. Allendale Rural Fire Protection Dist.*, 428 N.E.2d 1367, 1373 (Ind. App. 1981). Accessories purchased to be used with a product, such as hydraulic fluid, are also consequential damages. *Shavers v. Massey-Ferguson, Inc.*, 834 F.2d 970, 973 (11th Cir. 1987). Furthermore, hourly payments to employees, gasoline costs for transporting the equipment, filing fees and repossession fees all arise from the general or particular requirements of J&E and constitute consequential damages.

Consequently, the court concludes that there is no genuine issue of material fact that defendants' properly excluded all consequential and incidental damages. Since the only damages plaintiff seeks are for consequential or incidental damages, defendants are entitled to judgment as a matter of law on plaintiff's damages claim.

## IV. CONCLUSION

For all of the foregoing reasons, the court concludes that there is no genuine issue of material fact as to any of plaintiff's claims and that defendants are entitled to judgment as a matter of law.

An Order and Judgment in accordance with this Memorandum Opinion will be entered on the same date herewith.

This 26th day of August, 2008.

Signed By:

*James B. Todd*

United States Magistrate Judge